## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| IN RE: SAMSUNG TOP-LOAD WASHING MACHINE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : : : : | MDL Case No. 17-ml-2792-D<br><br>District Judge Timothy D. DeGiusti |
| This document relates to:<br>ALL CASES | : : : : | |

## O R D E R

Before the Court is a Motion by Plaintiffs and Class Counsel [Doc. No. 152], asking for final approval of the proposed Settlement Agreement. After a hearing, a series of supplemental briefs, and subsequent disclosures of side agreements, the matter is fully briefed and at issue.[1]

## BACKGROUND

This is a consolidated multidistrict class action lawsuit. Plaintiffs filed suit in various jurisdictions (the "Consolidated MDL Lawsuit") against Defendants Samsung Electronics America, Inc., and Samsung Electronics Co., Ltd., ("Defendants"), and in some cases also against Defendant Retailers Best Buy Co., Inc., The Home Depot, Inc., Home Depot U.S.A., Inc., Lowe's Companies, Inc., Lowe's Home Center, LLC, and Sears Holdings Corporation ("Defendant Retailers").

---

[1] Capitalized terms undefined in this Order are given the definition reflected in the Settlement Agreement.

Plaintiffs, as defined by the Settlement Agreement, refers to the named plaintiffs asserting claims on behalf of themselves and all or part of the Settlement Class. The Settlement Class includes every resident of the United States or its territories who was the original purchaser of certain washing machines for household use. *See* Settlement Agreement [Doc. No. 92-1], at 15. The full definition of the Settlement Class draws certain, well-defined and narrow exclusions[2] and identifies the relevant washer models. *Id*. The Settlement Class consists of approximately 2.8 million people.[3]

Plaintiffs alleged that certain Samsung top-load washing machines had experienced detachment of their tops from the washing machine chassis, and/or drain-pump failure during operation. After negotiations before a skilled mediator, on June 1, 2018, Plaintiffs, Defendants, and Defendant Retailers (collectively, the "Parties") filed a Settlement Agreement with the Court to fully resolve the Consolidated MDL Lawsuit. The Court held a preliminary approval hearing on November 29, 2018. On January 8, 2019, the Court entered an Order [Doc. No. 138] granting preliminary approval of the Settlement Agreement and provisionally approving certification of a nationwide Settlement Class.

---

[2] The Settlement Class excludes: (1) officers, directors, and employees of Defendants and Defendant Retailers; (2) insurers of Settlement Class Members; (3) subrogees or all entities claiming to be subrogated to the rights of a Washer purchaser or a Settlement Class Member; and (4) all third-party issuers or providers of extended warranties or service contracts for the Washers. Settlement Agreement at 10 ¶ 3.

[3] Defendants originally reported a Settlement Class size of 2.9 million purchasers. Plaintiffs have since informed the Court that, after correcting an error, the updated Settlement Class size is approximately 2.8 million. *See* Pls.' Suppl. Br. [Doc. No. 206] at 7 n.1.

The Settlement Administrator began effectuating the notice plan after the Court entered its order granting preliminary approval on January 8, 2019. Notice was to be sent out not later than March 9, 2019 (the "Notice Date").

Plaintiffs' Unopposed Motion for Final Approval of Settlement and Motion for Attorneys' Fees [Doc. No. 152], along with all supporting and opposing briefs and documentation, followed. The Court scheduled a hearing on the matter (the "Fairness Hearing"). Two objectors timely filed objections with the Court and indicated their intent to appear at the Fairness Hearing. First, John Douglas Morgan objected to both the Motion for Final Approval and the Motion for Attorneys' Fees [Doc. No. 163]; Colleen Kennedy then objected to the same [Doc. No. 179].

The Fairness Hearing took place on October 7, 2019. From the hearing's outset, the Court noted certain concerns with the Settlement Agreement and asked the Parties to preliminarily address them. The Court then heard arguments from Plaintiffs, Defendants, Objector Morgan (through counsel, M. Frank Bednarz), and Objector Kennedy (through counsel, Robert H. Solomon).

Subsequently, the Court issued an Order [Doc. No. 194] requiring the Parties and Objectors to submit briefs in order to more deliberately address the Court's concerns. All have since submitted their briefs and all related filings.[4] The Court's task is now to

---

[4] A number of filings followed the October 2019 Fairness Hearing, and various collateral disputes ensued regarding, *inter alia,* disclosure of attorney billing records, adequacy of expert declarations, disclosure of side agreements, requests for additional briefing, and an objector's motion to decertify/disqualify Class Counsel. Briefing on these and other matters persisted through April 1, 2020.

determine whether the Settlement Agreement merits final approval under the Federal Rules of Civil Procedure.

## SETTLEMENT AGREEMENT

Negotiation of the Settlement Agreement[5] followed a recall of the same washing machines at the center of this litigation.  *See* Settlement Agreement at 16.  Samsung Electronics America, Inc., and the United States Consumer Product Safety Commission initiated the voluntary recall on November 4, 2016, to address the circumstances where a washer's top detaches from the washer's chassis during operation.  The ongoing voluntary recall offers those who participate two alternative forms of relief: a rebate or repair.  *See Samsung Recalls Top-Load Washing Machines Due to Risk of Impact Injuries*, U.S. Consumer Prod. Safety Comm'n (Nov. 4, 2016), https://www.cpsc.gov/recalls/2017/samsung-recalls-top-load-washing-machines.

First, the voluntary recall offers a free in-home repair that includes reinforcement of the washer's top and a free one-year extension of the manufacturer's warranty (the "Recall Repair").  As a second option, it offers a rebate to be applied toward the purchase of a new Samsung or other brand washing machine, along with free installation of the new unit and removal of the old unit (the "Recall Rebate").

As previously noted, after the voluntary recall program was instituted, and following extensive negotiations, the Parties reached a nationwide, uncapped Settlement Agreement.

---

[5] The Settlement Agreement consists of the originally filed Settlement Agreement [Doc. No. 92-1], as modified by the Addendums to the Settlement Agreement [Doc. No. 137-1]; Doc. No. 148-1].

The Settlement Agreement specifically does not release property damage or personal injury claims [Doc. No. 92], at 18.  It provides compensation or other relief to the millions encompassed by the Settlement Class, depending on their specific circumstances.  In some instances, the relief provided by the Settlement Agreement is explicitly tied to the relief provided for by the voluntary recall detailed above.  An overview of the terms of both the voluntary recall and the Settlement Agreement, and how they relate to one another, is therefore worth stating here.  The Settlement Agreement[6] affords five forms of relief to those who have submitted a valid claim form (the "Claimants"):

1.  **Enhanced Minimum Recall Rebate**:  This is an enhanced rebate for Claimants who have already received, or will receive, a Recall Rebate for buying a new washing machine under Samsung's voluntary recall.  If the rebate they received was worth less than fifteen-and-a-half percent (15.5%) of the estimated price of the recalled machine, under the Settlement Agreement, these Claimants will receive an additional rebate to make up a total of fifteen-and-a-half percent (15.5%) of the price of the recalled washing machine.  *Id*. at 24–25.

2.  **Recall Repair Additional Benefit:**  For Claimants who select a Recall Repair, this is a coupon entitling Claimants or an immediate household member to a $25.00 rebate, to be applied toward the purchase of new Samsung microwave.  In the alternative, the Settlement Agreement offers between $50.00 and $85.00

---

[6] This summary includes concessions Defendants made in response to the Court's inquiries during the Fairness Hearing, as communicated by Plaintiffs' Supplemental Brief [Doc. No. 206].

off the purchase of a new Samsung major appliance (available for appliances
which cost no less than $900.00), to be used within one year of final approval.
*Id*. at 26–27.

3. **Commitment for Recall Repair:** For Claimants who select a Recall Repair
   under the voluntary recall program after they receive notice of the Settlement
   Agreement, Samsung must efficiently fulfill its voluntary recall within fourteen
   days of the request or send Claimants a one-time $50.00 cash-equivalent card.
   *Id*. at 30–32.

4. **Top Separation Relief:** For up to seven years after the date of purchase,
   Claimants who can document top separation of their washing machine can
   receive a full refund (to the extent not already provided) and up to $400.00 in
   expenses, capped at $50.00 in cleanup costs. *Id*. at 29–30.

5. **Drain-Pump Relief:** Claimants who can document expenses related to a drain-
   pump failure can receive up to $400.00 in expenses, capped at $50.00 in cleanup
   costs. Past repair costs of up to $150.00 can also be paid, if documented. Drain-
   pump repairs will be performed by Samsung for almost four years after the
   Notice Date. *Id*. at 32–34.

Defendants further agreed to pay for attorneys' expenses and fees without impacting
the relief provided to the Settlement Class, and all administration and notice expenses
related to the Settlement Agreement. *Id*. at 36.

## STANDARD OF DECISION

The Court may approve a settlement upon finding that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(1)(C). The Court's main concern in evaluating the settlement is to ensure that the rights of passive class members are not jeopardized by the proposed settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights"). Moreover, it is generally accepted that where settlement precedes class certification, district courts must be "even more scrupulous than usual" when examining the fairness of the proposed settlement. This is so where approval for settlement and certification are sought simultaneously, as is the case here. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004); *accord Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *see also* MANUAL FOR COMPLEX LITIGATION § 21.612, at 313 (4th ed. 2004).

## DISCUSSION

Before the Court reaches the fairness determination, it must first consider whether there are procedural issues impeding class certification. The Court must then determine whether the proposed Settlement Class meets the requirements of Rule 23 for certification purposes. *See Harper v. C.R. England, Inc.,* 746 F. App'x 712, 722 (10th Cir. 2018).[7] And, finally, if the Settlement is approved, the Court must set the proper award of attorneys' fees, a determination the Court will make in a separate order.

---

[7] All unpublished opinions in this Order are cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

I.      **The Court has jurisdiction over the Parties and has the power to grant final approval.**

Defendants, together with Defendant Retailers, moved under 28 U.S.C. § 1407 to centralize twenty-four pending actions in the Western District of Oklahoma. *See* Transfer Order [Doc. No. 1], at 1.  In light of the multitude of lawsuits filed in federal courts across the country, many of which were styled as class action lawsuits, the Judicial Panel on Multidistrict Litigation consolidated and transferred these suits to this Court, giving the Court jurisdiction over pretrial proceedings in the transferred actions. *See* 28 U.S.C. § 1407.  A district judge exercising authority over cases transferred for pretrial proceedings "inherits the entire pretrial jurisdiction that the transferor district judge would have exercised if the transfer had not occurred." 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3866 (3d ed. 2010).

Settlement proceedings are commonly conducted before MDL courts, and such proceedings fall squarely under the umbrella of pretrial proceedings over which transferee courts have jurisdiction. *See In re Managed Care Litig.*, 246 F.Supp.2d 1363, 1365 (Jud. Pan. Mult. Lit. 2003) (stating that "[i]t is established Panel and court of appeals precedent that settlement matters are appropriate pretrial proceedings subject to centralization under § 1407").

The Court sits in diversity, with original jurisdiction over these actions pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA").  The requirements of minimal diversity are met.  28 U.S.C. § 1332(d)(2).  Additionally, the

Parties and the Settlement Class Members have submitted to the jurisdiction of the Court for purposes of the Settlement.

## II.   Because the Settlement Class meets the requirements of Rule 23 for certification purposes, the Court grants final class certification.

As part of its preliminary approval of the Settlement Agreement, the Court has conditionally certified the Settlement Class. Order, [Doc. No. 138], at 10. Before addressing whether the Settlement Agreement merits final approval, the Court must address final certification for settlement purposes. *See Harper,* 746 F. App'x at 722 (vacating and remanding a district courts' approval of a class action settlement for failure to meaningfully explain its basis for class certification and noting that "[c]lass action settlements are premised upon the validity of the underlying class certification").

The Court may only certify a class for settlement purposes after being satisfied, following "rigorous analysis," that the prerequisites of Rule 23(a) have been met. *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)); *accord Shook v. El Paso Cty.*, 386 F.3d 963, 971 (10th Cir. 2004) (emphasizing that the court must "carefully apply the requirements of Rule 23"). Plaintiffs—as movants—bear the burden of showing, by a preponderance of the evidence, that the Rule 23 requirements are met. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).

### A. *The Settlement Class has been carefully defined such that its members are readily identifiable.*

Although not mentioned specifically in Rule 23 itself, a logical "prerequisite to class certification is an appropriate class definition." *See Troudt v. Oracle Corp.,* 325 F.R.D. 373, 375 (D. Colo. 2018). This aspect of the class certification inquiry is referred to as the question of "ascertainability." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015). The Tenth Circuit has not expressly adopted the ascertainability requirement, but trial courts in this circuit have nonetheless found it prudent to address the issue. *See, e.g., Maez v. Springs Automotive Group, LLC*, 268 F.R.D. 391, 394 (D. Colo. 2010) (stating that a prerequisite to class certification is an adequate class definition).

The task, here, is straightforward; the Settlement Class is defined as every resident of the United States or its territories who was the original purchaser of certain washers for household use. The washer models at issue are discrete variables, defined and easily ascertainable. And the limited exclusions from the Settlement Class are narrow and well-defined. *See* Settlement Agreement at 15. The Settlement Class includes approximately 2.8 million people. There are no subclasses. There are neither disputes nor objections as to the ascertainability of the Settlement Class, and the Court finds that the proposed Settlement Class has been adequately defined.

**B. The Settlement Class of 2.8 million members is sufficiently numerous to meet the requirements of Rule 23.**

Federal Rule of Civil Procedure 23(a) calls for a judicial finding that the proposed class is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1); *see Peterson v. Okla. City Housing Auth.,* 545 F.2d 1270, 1273 (10th Cir. 1976).

It is undisputed that the Settlement Class is sufficiently numerous to warrant class certification.   The Settlement Class includes 2.8 million members.   The Court finds Plaintiffs meet their burden as to the numerosity requirement—joinder would clearly be impractical under the circumstances. *Cf. Trevizo,* 455 F.3d at 1162 (affirming a district court's finding that numerosity was not met in a class of eighty-four members), *with In re Nat'l Football League Players Concussion Injury Litig*., 821 F.3d 410 (3d Cir. 2016) (affirming a district court's class certification and final approval of a settlement involving a class of 20,000 members).

**C. Common questions of law and fact are sufficient to meet the commonality requirement, and the resolution of these questions drives the resolution of the Class Members' claims.**

Commonality asks whether "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).   A finding of commonality requires only a single common question of law or fact. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).   "[E]very member of the class need not be in a situation identical to that of the named plaintiff" to meet Rule 23(a)'s commonality requirements. *Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982) (citing *Rich v. Martin Marietta Corp.,* 522 F.2d 333,

340 (10th Cir. 1975)). Factual differences between Class Members' claims do not necessarily defeat certification where common questions of law exist. *Id.* (citing *Penn v. San Juan Hosp., Inc.,* 528 F.2d 1181, 1189 (10th Cir. 1975)).

To demonstrate commonality, Plaintiffs must show that Class Members have suffered the same injury. *Dukes*, 564 U.S. at 349. "Their claims must depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. At this stage, the Court focuses its inquiry on whether a class action will generate common answers that are likely to drive resolution of the lawsuit. *Id*.

As Plaintiffs indicate, there are a number of common questions of law and fact in this case, including: whether the washers at issue have material defects, whether Defendants knew or should have known of such defects when placing the washers into the stream of commerce, and whether the washers are merchantable. Plaintiffs assert claims of, *inter alia*, breach of implied warranty of merchantability, strict liability, and breach of express warranty. *See generally* Compl. [Doc. No. 1], CIV-17-0046. To prevail on their claims, Plaintiffs would have to successfully challenge the same conduct by Defendants in designing, manufacturing, marketing, and warrantying the washers, and the same conduct by Defendant Retailers in selling them. The standard that a single common question is required to certify a class is easily met. *See Devaughn*, 594 F.3d at 1195 (a finding of commonality requires only a single common question).

Resolution of these claims would—to be sure—drive the resolution of the lawsuit. After all, Plaintiffs' claims rise and fall on the resolution of the common questions. That there may exist factual differences between the claims of the Class Members and those of the named plaintiffs is not fatal to class certification. *In re Nat'l Football League.,* 821 F.3d at 427 ("Even if players' particular injuries are unique, their negligence and fraud claims still depend on the same common questions regarding the NFL's conduct.").

Under the present circumstances, the Court finds there exists commonality between the named plaintiffs' claims and those of the absentees.   Any dissimilarities do not impede the generation of common answers. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.,* 722 F.3d 838, 852–53 (6th Cir. 2013) (finding commonality met where different washing machine models were involved, but a particular defect was alleged by all plaintiffs).

### D. Plaintiffs' claims are typical of the Class Members' claims, as they challenge the same conduct by Defendants.

An analysis of commonality under Rule 23 tends to merge with the rule's typicality requirement. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 (1982).  Under Rule 23, the Court must find the claims of the named plaintiffs are typical of those of the absentees. FED. R. CIV. P. 23(a)(3).  Typicality is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Dukes*, 564 U.S. at 349; *accord Devaughn,* 594 F.3d at 1194.  This requirement looks to the alignment of the representatives' interests with those of absentees.  The Court must ensure that, by pursuing their own interests,

Plaintiffs also advocate for the interests of the absent class members. *Falcon*, 457 U.S. at 158 n.13.

Plaintiffs assert the typicality requirement is met, as the class representatives' and the Class Members' claims challenge the same conduct by Defendants in designing, manufacturing, marketing, warrantying, and selling the washers at issue. The Court agrees that the class representatives seek recovery under the same legal theories for the same wrongful conduct as the class they represent. This is sufficient to satisfy Rule 23's typicality requirement. *See Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ("Differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory.").

This finding serves as further indication that "[C]lass [M]embers [have been] fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626.

## E. The Settlement Class has been adequately represented, as the Court finds no debilitating conflicts among Class Members or between Class Members and Class Counsel.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To determine if the Class is being adequately represented, the Court should consider whether: (1) "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and, (2) "the named plaintiffs and their counsel [have] prosecute[d] the action vigorously on behalf of the class." *Rutter & Wilbanks Corp. v. Shell Oil, Co.*, 314 F.3d 1180, 1187–88 (10th Cir.

2002).

As the Parties note, the Court has previously found that the Settlement Class was adequately represented, and "that the [S]ettlement does not grant preferential treatment to [P]laintiffs and [C]lass [C]ounsel." Order [Doc. No. 138], at 10. The requirement of adequate representation, however, is a continuing one. *Hansberry v. Lee*, 311 U.S. 32, 45 (1940). Further, when a class action settles, the idea of adequacy of representation as a performance standard for class counsel overlaps substantially with the inquiry into the fairness of the class settlement. *See Thorogood v. Sears, Roebuck & Co.*, 627 F.3d 289, 293–94 (7th Cir. 2010) (discussing a variety of ways that class actions may not protect the interests of the class); *see also In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 378 (E.D. Pa. 2015), *aff'd sub nom.,* 821 F.3d 410 (3d Cir. 2016) ("Objectors' challenges to the fairness of the Settlement Agreement overlap with their challenges to adequacy of representation."). Adequate representation, as required by Rule 23(a)(4), looks in part to the relationship between the class and class counsel. *Hansberry*, 311 U.S. at 45.

i. *Objector Morgan's Motion to Disqualify [Doc. No. 247] Class Counsel is denied, as the Court finds no debilitating conflict between Class Counsel and the Settlement Class they represent.*

There is no indication that Class Counsel did not perform competently or that any conflicts of interest surfaced after the Court issued preliminary approval. No objectors challenged the experience or qualifications of Class Counsel, nor did they flag any potential conflicts of interest. Objector Morgan, late in the proceedings, filed a Motion to Disqualify

Class Counsel [Doc. No. 247], claiming that Class Counsel failed to adequately represent the Settlement Class when it refused to agree to enter into a covenant not to sue the Hamilton Lincoln Law Institute Center for Class Action Fairness ("HLLI") should Objector Morgan enter into a side agreement with Defendants.

For a number of weeks, Objector Morgan and Defendants represented to the Court that a side agreement might be reached, which would re-allocate part of the funds set aside for attorneys' fees to the Settlement Class. *See* Defendants' Notice [Doc. No. 215] (filed on December 31, 2019 and stating Defendants and Objector Morgan were in the process of finalizing a side agreement); Defendants' Mot. Leave [Doc. No. 219] (requesting an extension of time on the matter, filed on January 22, 2020); Morgan's First Notice [Doc. No. 221] (subsequently stating that no agreement had been finalized, but giving no reason for the delay); Morgan's Second Notice [Doc. No. 225] (filed on February 12, 2020, and stating that "[n]o side agreement has been reached (yet) due to the risk that [C]lass [C]ounsel would sue Objector John Douglas Morgan and his counsel.").

Any purported benefit to the Class that may have come from a side agreement which may (or may not) have come to fruition was far from certain—especially given that the award of attorneys' fees is left to the Court's broad discretion.  The Court ordered the Parties to disclose the agreement, and although its terms were never filed of record, Objector Morgan briefed its substantive content. Class Counsel filed a response to Objector Morgan's briefing, and therein alluded to the fact that the side agreement's terms constituted misconduct.

Ultimately, Class Counsel never threatened to sue Objector Morgan, there was never

16

any certainty that the side agreement would have, in fact, materialized had it not been for Class Counsel's briefing, and further, there was no indication that the side agreement would certainly benefit the Settlement Class. Perhaps Class Counsel's terse briefing indicated nothing more than an attempt to avoid endless ancillary litigation about the litigation, which would delay the resolution of these matters and work to the detriment of the Settlement Class. Class Counsel took no position as to the side agreement and at no point violated principles of adequacy of representation. Objector Morgan points to no authority that would indicate otherwise, and the Court can locate none.

Objector Morgan specifically asserts that Class Counsel, Leif Cabraser's representation is problematic and merits disqualification. According to Morgan, Cabraser regularly seeks fees in cases where HLLI represents an objector. There are now at least seven pending cases where HLLI and Cabraser represent adverse parties. *See* Mot. to Disqualify at 8 n.4 (collecting cases). Objector Morgan relies on non-binding authority in support of his assertions, namely *Eubank v. Pella*, 753 F.3d 718, 724 (7th Cir. 2014).

In *Eubank*, the appellate court reversed a district court's approval of a class action settlement; in that case, "despite the presence of objectors, the district court approved a class action settlement that is inequitable—even scandalous." *Id*. 753 F.3d at 721. The number of factors that distinguish *Eubank* from this case are plentiful. In *Eubank,* the Seventh Circuit concluded that "[t]he impropriety of allowing [counsel] to serve as class representative as long as his son-in-law was lead class counsel was palpable." *Id.* These facts are inapposite.

Moreover, the appellate court made several points directly contradicting Objector

Morgan's position.  For example, the Seventh Circuit noted that "when an action has continued over the course of many years, the prospect of having those most familiar with its course and status be automatically disqualified whenever class members have conflicting interests would substantially diminish the efficacy of class actions as a method of dispute resolution." *Id*. (citing *In re "Agent Orange" Product Liab. Litig.,* 800 F.2d 14, 18–19 (2d Cir. 1986)).

Objector Morgan raises no issues that compare to those addressed in *Eubanks*, but rather essentially contends that because HLLI and Class Counsel are adverse in other pending matters, the Court should disqualify Class Counsel.  And, of course, allow objectors to bid for the right to represent the Settlement Class.  Mot. to Disqualify at 8 (citing to Geoffrey P. Miller, *Competing Bids in Class Action Settlements*, 31 HOFSTRA L. REV. 633 (2003)).  The Court finds this insufficient to merit disqualification.

Because there exists no debilitating conflict between Class Counsel and the represented Settlement Class, Objector Morgan's Motion to Disqualify is DENIED.

*ii.    There are no debilitating intra-class conflicts to preclude class certification.*

The lawyers for the Settlement Class, even when acting as faithful agents, cannot represent principals with divergent interests.  The relationship between the class representatives and the absent class members is also important.  *Amchem*, 521 U.S. at 591. The Court has considered and rejected the possibility that subclasses were necessary in this case, in response, particularly, to Objector Morgan's assertion that many of the claimants appear to be eligible only for the category of relief that provides the smallest benefit.  *See* Morgan's Obj., [Doc. No. 163], at 14 ("about 95% of the claims fall into the two rebate

categories").

At the Fairness Hearing, Objector Morgan specifically conceded that sub-classing under these facts was unnecessary, and Plaintiffs addressed the issue in a supplemental brief. *See* Pls.' Suppl. Br. [Doc. No. 206], at 8. There is a recognized high cost to subclass Balkanization and fragmenting negotiations. The Settlement Agreement is uncapped, and there is no indication that disbursement of funds to one group robs from the others.

The Court concludes that no debilitating intra-class conflicts exist, and that the costs of sub-classing, in this case, outweigh the potential benefits. *See Sullivan v. DB Investments, Inc*., 667 F.3d 273, 326–27 (3d Cir. 2011) (subclasses had some appeal in remedying an unequal division of the settlement fund, though, the Third Circuit deferred to the district court's thorough explanation that the objectors had failed to show divergent or antagonistic interests between the three groups and had not established that these groups had claims of varying merit).

For purposes of class certification, the Court finds the Settlement Class to have been at all times adequately represented. Adequacy of representation will be further addressed, *infra*, in the context of the final fairness determination.

## F. The predominance and superiority requirements of Rule 23(b)(3) are also satisfied under the facts.

### i.    Predominance

To meet their burden, Plaintiffs must also show that, under Rule 23(b), common questions subject to generalized, class-wide proof predominate over individual questions. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 622–23.  It is not necessary that all elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive.  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1196, 185 L.Ed.2d 308 (2013).  Put differently, the predominance prong "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

Objector Kristina Pearson[8] contends that the Settlement Class should not be certified. But her assertions that "class counsel are not representing the class fairly," "the class representatives [did not] fairly represent[] the class," and "[i]ndividual claims predominate over common and factual issues" (Resp. Supp. Mot. Final Approval [Doc. No. 186], Ex. M at 28) are conclusory and lack any further explanation.  *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007) ("General objections without factual or legal substantiation do not carry weight."); 7B FED. PRAC. & PROC. § 1797.1 (3d ed. 2011) ("Only clearly presented objections by those who will be bound by the settlement will be considered.").  This objection is overruled.

---

[8] Objector Pearson was among the objectors who filed objections with the Parties but did not timely submit any papers to the Court, and further did not indicate an intent to appear. The role of the Court in reviewing the Settlement Agreement is to act as a fiduciary of the Settlement Class.  *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (Posner, J.).  Though according to the Court's Order these absent Settlement Class members waived their objections, the merits of their arguments will nonetheless be considered by the Court in reviewing the fairness of the Settlement Agreement.

The predominance test is easily met in cases alleging consumer violations.  *United Food & Commercial Workers Union v. Chesapeake Energy Corp.,* 281 F.R.D. 641, 655–56 (W.D. Okla. 2012) (quoting *Amchem*, 521 U.S. at 625).  Here, there are many questions common to the Settlement Class.  Key elements of Plaintiffs' claims are issues common to the Settlement Class, and the Settlement Class is thereby "sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 622–23.

   *ii.     Superiority*

Finally, Plaintiffs must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).  Class treatment is superior when it achieves "economies of time, effort, and expense, and promote[s] uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about undesirable results."  *CGC Holding Co.*, 773 F.3d at 1087 (quoting *Amchem*, 521 U.S. at 615).

The Court finds a class action to be the superior method of adjudication in light of: (1) the reasons the Judicial Panel on Multidistrict Litigation consolidated these cases; (2) Class Members' individual claims having limited worth compared to the high cost of litigation; (3) the Settlement Agreement promoting uniformity of decision as to those similarly situated.

All the requirements for class certification under Rule 23 are met.  Plaintiffs' request that the Court certify the Settlement Class—as defined by the Settlement Agreement—under Rules 23(a) and 23(b)(3) is granted.  The Court herein reaffirms class certification

for settlement purposes.

### III.     Notice was adequate and satisfies the requirements of Rule 23 and due process.

On January 8, 2019, the Court approved the Parties' proposed notice plan.  Prelim. Approval Order [Doc. No. 138], at 10.  The plan was then effectuated as follows: First, KCC, the Settlement Administrator, promptly launched the Settlement Website and mailed notice to the Settlement Class.  Mot. Prelim. Approval [Doc. No. 108], Ex. B at 3–4 [hereinafter Peak Decl.].  Because Defendants provided the contact information of those who had participated in the voluntary recall, postal addresses were available for most Class Members.  *Id*. at 5.  Notices returned as undeliverable were re-mailed to any alternative address available through postal service information.  *Id*.

To further extend the notice's reach, the Settlement Administrator also implemented an internet media effort.  KCC purchased and administered internet impressions, strategically placed to target Class Members. These appeared as banner advertisements on both mobile and desktop devices.  The ads linked directly to the Settlement Website.  *Id*. at 6–7.

Through the Settlement Website, Class Members filed their claims online.  They also had access to the Settlement Agreement, notice, any relevant Court documents, "Frequently Asked Questions," and any updates concerning the Settlement.  *Id*. at 7.  The Settlement Administrator also established a toll-free number. *Id*.

In response to the Court's concerns, Samsung has further agreed to add a link in the Settlement Website to its voluntary recall website.  *See* Pls.' Suppl. Br., [Doc. No. 206], at

7.  Samsung has also agreed to keep the Settlement Website and call center live through the end of the extended warranty[9] benefit periods in 2023.  *Id.*

Under substantially similar safeguards, both Rule 23 and the Constitution's due process guarantees require the Court to confirm that unnamed Class Members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  FED. R. CIV. P. 23(c)(2)(B); *see DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005).  Neither Rule 23 nor due process "require actual notice to each party intended to be bound by the adjudication of a representative action."  *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citing *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 313 (1950)).

Objectors raised concerns as to the adequacy and efficacy of the notice campaign. *See, e.g.,* Cole Obj. [Doc. No. 186], Ex. M at 19 (complaining about the phone number provided for questions and stating that it "is a joke . . . no one there [sic] to answer questions, just recorded info already in the forms and website"); Mot. Strike, [Doc. No. 191], at 5 (noting the low number of valid claims recognized).  The Court will consider these objections in its determination of whether the absent class was afforded adequate notice.

In this case, the notice itself included all the basic requirements of Rule 23(c)(2)(B), identifying:

---

[9] The extended warranty feature of the Settlement Agreement adds significant value for the Class, as discussed more *infra*.

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*See* Notice, [Doc. No. 108], Ex. 3 at 2; Order, [Doc. No. 138], at 12–13. The notice further informed the Settlement Class of their right to opt out and object and directed them to the Settlement Website. *Id*. The Court granted the Settlement Class enough time—150 days—to file a claim, file an objection, or opt out. Order, [Doc. No. 138], at 14, 18. *Cf. DeJulius*, 429 F.3d at 944 (notice was adequate even where untimely for some plaintiffs); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (approving notice sent 31 days before the deadline for objections).

Because Defendants agreed to provide, and did provide, names and addresses for consumers, 2,617,980 notices were mailed directly. Only 153,963 were returned as undeliverable. Peak Decl. ¶¶ 5–6. The Settlement Administrator supplemented this notice by distributing publication notice via millions of internet banner impressions, which linked directly to the Settlement Website. *Id*. at ¶ 6. As last reported to the Court, approximately 77,022 claims have been filed. Resp. Supp. Mot. Final Approval, [Doc. No. 186] Ex. 3, 4. Of these, less than half were valid claims. Pls.' Suppl. Br., [Doc. No. 206] at 5; Ex. 1 ¶¶ 15–17.[10]

---

[10] Defendants filed a Notice alerting the Court that the discovery of a reviewing error by the Settlement Administrator resulted in additional potentially valid claims being identified. The review process regarding these claims is underway and can be addressed as necessary in the course of administration of the Settlement relief. Because the information does not alter the Court's conclusions herein and would potentially only bolsters its

Although notice reached approximately 88% of the Settlement Class, there was a claims rate of about 3.1%. The Court has considered and rejected the possibility of pursuing claim stimulation measures. For example, in *Pollard v. Remington Arms Co.*, a district court encountering "an appalling claims rate" ordered the parties to implement a supplemental notice plan. 320 F.R.D. 198, 205 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018). This supplemental plan included a social media campaign, radio advertising, email notices, direct mailings, and posters. *Id*. The supplemental plan successfully increased the claims rate. *Id*. at 209.

Upon review of the notice plan implemented by the Settlement Administrator, the Court is satisfied that additional measures will likely be to no avail. The initial claims rate in *Remington* was significantly lower than the one at issue here. *See Pollard*, 896 F.3d at 905–07 (affirming the final claims rate of 0.29%). The initial plan in this case, like the supplemental plan in *Remington*, incorporated outreach via both paper mail and electronic media. Notice, here, was substantially direct and reached a large portion of the Settlement Class.

It is possible—even likely—that Class Members received notice and yet decided against submitting a claim. This might be because, as Objector Morgan argues, a portion of the Class is entitled only to *de minims* benefits. Or, it could be that a substantial percentage of Class Members have not experienced problems with their Washers and remain satisfied with the product. In any event, certain benefits under the Settlement

findings by increasing the valid claims rate, no response to the Notice or additional briefing is necessary. *See* Notice [Doc. No. 250].

Agreement remain available to many Class Members even though the claims submission deadline has passed.  *See* Mot. Final Approval [Doc. No. 152], at 18.

As some circuits have noted, a low claims rate is neither indicative of poor notice nor a reason to necessarily deny settlement approval.  *See, e.g.*, *Pollard*, 896 F.3d at 905–07 (affirming settlement with claims rate of 0.29%); *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 24–25 (D.D.C. 2019) (noting that claims rates are frequently between 0.25% and 2%).  At the fairness hearing, Objector Morgan attempted to distinguish the *Pollard* decision by indicating it did not involve notice directly issued to the Settlement Class.  Fairness Hearing Transcript [Doc. No. 195], at 22.  Quantitative studies conducted by the Federal Trade Commission, nevertheless, confirm that claims rates in class action settlements are typically low.  *See* Fed. Trade Comm'n, *Administration of Settlements in* CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT CAMPAIGNS 11 (2019) (finding the weighted mean claims rate was 4%).  Most significant, however, are the conclusions reached by circuit courts that low claims rates are not necessarily indicative of a deficient notice plan.  *Pollard*, 896 F.3d at 906.

Accordingly, objections as to the adequacy of notice are overruled.  The Court finds the notice plan instituted by the Parties comports with the requirements of Rule 23 and due process.  The Court also finds that notice to appropriate federal and state officials pursuant to CAFA has been timely sent and that such notice satisfies the requirements of 28 U.S.C. § 1715.

**IV.   The Court finds the Settlement Agreement is fair, adequate, and reasonable, and grants final approval.**

Federal Rule of Civil Procedure 23(e)(2), states that a Court may approve a class action settlement "only on finding that it is fair, reasonable, and adequate." The Court is to ensure that the rights of passive Class Members are not jeopardized by the proposed Settlement Agreement. *See Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights"). Where settlement precedes class certification, district courts must be "even more scrupulous than usual" when examining the fairness of the proposed settlement. *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d at 534; *accord Hanlon,* 150 F.3d at 1026; *In re Motor Fuel Temperature Sales Practices Litig*., 271 F.R.D. 263, 270 (D. Kan. 2010).

In addition to the Rule 23 requirements, the Tenth Circuit in *Rutter & Wilbanks Corp. v. Shell Oil, Co*., 314 F.3d 1180, 1188 (10th Cir. 2002), set forth four factors relevant to the evaluation of a proposed settlement as fair, reasonable, and adequate:[11]

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

---

[11] Although the *Rutter* factors predate the 2018 amendments to Rule 23, the considerations largely overlap, and the amended rule does not displace the earlier guidance. *See* Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment.

**A.** ***Class Counsel negotiated the Settlement Agreement at arm's length and, along with class representatives, adequately represented the Settlement Class.***

From the outset, the Court must find that: (1) the class representatives and Class Counsel adequately represented the Settlement Class; and (2) the Settlement Agreement was negotiated at arm's length. FED. R. CIV. P. 23(e)(2)(A)-(B). Courts analyze the first procedural factor, adequacy of representation, in the same manner that they evaluate adequacy under Rule 23(a)(4). *See O'Connor v. Uber Techs., Inc.*, No. 13-3826, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-1720, 2019 WL 359981, at *15 (E.D.N.Y. Jan. 28, 2019); *In re Crocs, Inc. Sec. Litig.,* 306 F.R.D. 672, 688 (D. Colo. 2014). This means that courts consider whether: (1) "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) "the named plaintiffs and their counsel [have] prosecute[d] the action vigorously on behalf of the class." *Rutter*, 314 F.3d at 1187–88.

    *i.   Adequacy of Representation and Conflicts of Interest*

First, no objector alleges, much less advances, any facts or evidence of fraud, collusion, or overreaching in connection with the Settlement Agreement.  The Court, *supra,* made certain findings as to adequacy of representation, and those are likewise relevant here.  Objector Morgan nevertheless points out that "[s]ettlements negotiated prior to formal class certification—such as this one—require the Court to be particularly vigilant not only for explicit collusion, but also for more subtle signs that [C]lass [C]ounsel have allowed pursuit of their own self-interests and that of certain [C]lass [M]embers to infect their negotiations."  Morgan Obj. [Doc. No. 163] at 11.

There is ample evidence that the Settlement Agreement was vigorously negotiated. *See* Order [Doc. No. 138] at 10–11.  The absence of adversity and counsel's inherent and unavoidable conflict in any class action settlement, however, complicate an ultimate determination on this point.  The Settlement Agreement was reached after three months of negotiations.  *See* Resp. Supp. Final Approval [Doc. No. 187], at 11.  Before settlement discussions began, Plaintiffs' claims had been vigorously litigated.  Following preliminary class certification for settlement purposes, there has been no indication that the claims the Settlement Class is being asked to relinquish are actually much stronger than was initially proposed, and thus worth more than the value the Settlement Agreement ascribes to them. Importantly, the Settlement Agreement explicitly does not release property damage or personal injury claims.  *See* Settlement Agreement [Doc. No. 92], at 18.

The opt-out rate is low: it appears only 0.02% of the Settlement Class opted out. *See* Resp. Supp. Final Approval [Doc. No. 187], at 6; Peak Decl. ¶¶ 12–13.[12]  Although the typical class action settlement notice is apt to yield a low response, the average opt-out rate for a products liability case is 0.1%.  *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Op-outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529 (2004).  This gives some indication that the strength of the claims here has been accurately gauged.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 813 (1985) ("If . . . the plaintiff's claim is sufficiently large or important . . . he will likely have

---

[12] Defendants have disclosed additional information on opt-outs that does not alter the Court's conclusions.  *See* Notice [Doc. No. 246].

retained an attorney or have thought about filing suit, and should be fully capable of exercising his right to opt out.").

That the terms of the proposed New Jersey settlement were less favorable than the ones achieved here is further indication that the claims have been properly valued. *See* Prelim. Approval Order at 8. Objectors provide no direct evidence to the contrary, and all available data support the Court's preliminary determination that these claims have been vigorously litigated. This supports a finding of adequate representation. Any objections on this point are hereby overruled.

### ii. *Fair, Honest, Arm's-Length Negotiations*

The second procedural factor—arm's-length negotiation—overlaps with the Tenth Circuit's consideration of "whether the proposed settlement was fairly and honestly negotiated." *Rutter*, 314 F.3d at 1188. The presence of the mediator weighs heavily in favor of this requirement being met. *See e.g., Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (presence of a court-appointed mediator important to adequacy of representation).

Again, objectors raise no direct concerns on this issue. Plaintiffs assert, and the Court previously concluded, that the Settlement Agreement "is the product of extensive, non-collusive, arm's-length negotiations between experienced counsel who were thoroughly informed of the strengths and weaknesses of the case through discovery and motion practice, and whose negotiations were supervised by accomplished mediator Michael N. Ungar over the course of nine days of formal mediation sessions." Order [Doc. No. 138] at 10–11.

The Court therefore finds the Settlement Class was adequately represented by the class representatives and Class Counsel, who fairly and honestly negotiated the Settlement at arm's length.

### B. *The Settlement Agreement is substantively adequate.*

The Parties, at the Court's request, have provided an approximate valuation for all forms of relief available under the Settlement Agreement. Since preliminary approval there have been several shifts in the deal's overall valuation. The Court acknowledged these discrepancies during the Fairness Hearing and the Parties have since addressed the substantive adequacy of the Agreement's terms in supplemental briefs. Nevertheless, several objectors raised concerns about substantive adequacy. *See, e.g.,* Hayes Obj. [Doc. No. 186], Ex. M at 20 ("The appliance rebate has no value to me.").

To merit final approval, a proposed settlement must comport with the following substantive factors: the relief provided for the Settlement Class must be adequate, and the Settlement must treat Class Members equitably. FED. R. CIV. P. 23(e)(2)(C)-(D).

Rule 23 sets out four criteria for assessing the substantive adequacy of the Settlement Agreement: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including the timing of payment; and (iv) any agreement made in connection with the proposal. FED. R. CIV. P. 23(e)(2)(C)(i)-(iv).

i.     *The Settlement Agreement provides acceptable relief given the costs, risks, and delays of trial and appeal.*

In granting final approval, the Court must consider "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Rutter*, 314 F.3d at 1188. These considerations overlap with Rule 23's requirement that the assessment of the Settlement Agreement's substantive adequacy be measured against the "the costs, risks, and delay of trial and appeal" of the underlying cases. FED. R. CIV. P. 23(e)(2)(C)(i).

If Class Members are forced to engage in continued litigation, there are serious questions of law and fact that place the ultimate outcome of such litigation in doubt. First, Plaintiffs would face the challenge of certifying claims under consumer protection laws across several states. *See, e.g., Porcell v. Lincoln Wood Prod.,* Inc., 713 F. Supp. 2d 1305, 1325 (D.N.M. 2010) (denying class certification where adjudication would require application of the law of nine jurisdictions to breach of warranty claims and the law of eight jurisdictions to unfair trade practices acts/consumer protection statutes claims); *Sec. Sys., Inc v. Alder Holdings, LLC*, 421 F. Supp. 3d 1186, 1197–98 (D. Utah 2019) (in a putative class action lawsuit, individualized issues of law and fact predominated on claims of fraudulent misrepresentation); *see also Amchem,* 521 U.S. at 591 (holding that a district court faced with a request for settlement-only class certification need not inquire whether case would present intractable problems of trial management) Whatever challenges these significant questions of law might pose, if Plaintiffs succeed in their claims, experts

estimate recoverable damages to be about seven percent (7%) of the purchase price, or about $50.00.  *See* Mot. Att'y Fees, Lichtman Decl. [Doc. No. 142-2] ¶ 18.  Incurred transaction costs in this case might therefore swallow any potential recovery.  Plaintiffs would also have to wrestle against the reality that a voluntary recall meant to address the very injuries complained of here was already in place before many of the claims were brought.  *See In re Aqua Dots Prods. Liab. Litig*., 654 F.3d 748, 753 (7th Cir. 2011) (affirming denial of class certification outside the settlement context due in part to product recall); *see also Conrad v. Boiron, Inc*., 869 F.3d 536, 539 (7th Cir. 2017) (affirming a denial of certification on grounds of adequacy of representation).

Under the Settlement Agreement, all Class Members are entitled to future warranty protection with an estimated value of $6.44–11.31 million.  *See* Allen Decl. [Doc. No. 186-7]; *see also* Pls.' Suppl. Br. at 5.  Class Members may also select an Enhanced Minimum Recall Rebate bringing their rebate payment to at least fifteen-and-a-half percent (15.5%) of their Washer's estimated purchase price (exceeding the estimated seven percent (7%) Plaintiffs would receive given a favorable jury verdict).  Although the claims process is ongoing, the Enhanced Minimum Recall Rebate component has been valued at $12,763.09 based on 218 valid claims. *See* Pls.' Suppl. Br. [Doc. No. 206] at 1.

In addition, Class Members who experience Top Separation and Drain Pump Failures receive a full refund or full repair, respectively, plus up to $400.00 in consequential expenses.  These components have been valued at $94,118.31 based on 462 valid claims.  *Id*.  Because the Settlement Agreement is uncapped, Defendants will pay the entire value of every eligible claim regardless of how many Class Members participate.

*See, e.g., In re Nat'l Football League,* 821 F.3d at 410 (affirming a district court's final approval of a class action settlement where the district court cited structural protections including uncapped monetary awards).

The most challenged aspect of the Settlement Agreement is a benefit entitled Recall Repair Additional Benefit. *See, e.g.,* Haynes Obj. ("The appliance rebate has no value to me. My experience with Samsung appliances includes this washing machine, a refrigerator, [and a hair dryer]. I do not plan to purchase additional Samsung appliances. Three strikes and you are out is an American tradition."); Morgan Obj. at 9 ("To receive any settlement value, Rebate Coupon claimants must complete two claims forms and spend hundreds or thousands of dollars on a Samsung appliance. This is not class relief. It's a Samsung sales program."); *see also* Cole, Oritz, Scher, Tischler Objs. [Doc. No. 186], Ex. M at 19, 20, 22, 29–31 (asserting that the rebate is insufficient).

It is an "[a]busive class action settlement in which plaintiffs receive promotional coupons or other nominal damages while class counsel receives large fees." *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995).

The Recall Repair Additional Benefit entitles claimants to a cash rebate of up to $85.00. Objector Morgan argues that this component of the Settlement Agreement makes it akin to those that have been set aside by appellate courts. *See,e.g., In re Gen. Motors Corp.,* 55 F.3d at 768 (proposed class action settlement set aside where the class would receive a coupon for discount on the purchase of new truck from manufacturer). The rebates here, however, are not the primary relief afforded to the Settlement Class. Claimants are entitled to a rebate in addition to other valuable benefits. *See Chambers v.*

*Whirlpool Corp.*, 214 F. Supp. 3d 877, 895 (C.D. Cal. 2016) (approving a settlement where "in addition to coupon relief, the settlement provide[d] monetary and injunctive relief"). The benefit is transferrable to immediate family members, and the Settlement Class appears to be taking advantage of this: at least 1,237 claimants have already invoked the transferability feature. *See* Pls.' Suppl. Br. at 10.

Under these circumstances, the rebate benefit serves both the Settlement Class and Defendants, thereby increasing the overall value of the Settlement Agreement. *See In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001). It is not the sole benefit extended to the Settlement Class under the Settlement Agreement. Moreover, the Settlement Agreement specifically does not release property damage or personal injury claims. *See* Settlement Agreement [Doc. No. 92], at 18. This case is therefore unlike the coupon cases rejected by some circuits. All objections to the Settlement Agreement's substantive adequacy are overruled. The Court finds the value of immediate recovery here outweighs the "mere possibility of future relief after protracted and expensive litigation." *Rutter*, 314 F.3d at 1188.

ii.  *The Settlement Agreement's structure was designed for efficient claim processing and relief distribution.*

Certain objectors have challenged the claims-processing procedure and relief-distribution methods instituted. *See, e.g.,* Martin Obj. [Doc. No. 186], Ex. M at 33 (claiming that the Settlement did not provide him a full refund even though he experienced Top Separation because he has no evidence documenting the event).

Although a claim form is meant to ensure that the claimant is entitled to compensation from a settlement fund, the claim process should be as simple, straightforward, and nonburdensome as possible. *See, e.g., Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 WL 3206324, at *7 (M.D. N.C. July 27, 2017). In some cases, monies can be distributed without requiring class members to produce any proof. *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2013 WL 6086933, *1 (S.D. Cal. Nov. 19, 2013) (noting that "[n]o proof of purchase is required to receive $25.00"). The Manual for Complex Litigation states that "[c]ompletion . . . of the claims forms should be no more burdensome than necessary," noting that "for purposes of administering a settlement . . . secondary forms of proof and estimates are generally acceptable." MANUAL FOR COMPLEX LITIGATION § 21.66 (4th ed. 2004).

The claims-administration process here allows for an efficient review of claims and swift distribution of benefits.  As the Court noted in granting preliminary approval, it is significant that "no proof of purchase is required in order for Class Members to assert their rights under the [] Settlement."  Prelim. Approval Order, [Doc. No. 138], at 11.

At the Fairness Hearing, the Court asked the Parties to address several claims-administration issues.  The Court asked that the Parties address the fact that claimants for past Top Separation were less likely to have photographic evidence than those who experience future Top Separation.  Those with future claims will be fully aware that, to facilitate the claims process, they may need to take a photo depicting the separation. Defendants have since made the concession to pay claims even without a photograph, and the Court agrees with Plaintiffs' assessment that "a Class Member who no longer owns

their Washer may be less likely to have a stray photograph of the Top Separation event but is no less likely to have submitted an insurance claim." Pls.' Suppl. Br. at 8. These flexible documentation requirements, assuring that the benefits of the Settlement Agreement are only distributed to proper and deserving claimants, favor final approval.[13]

Where claims are deficient, the process in place allows for those deficiencies to be cured. Mot. Final Approval, Ex. B ¶ 14. The claims period is thirty days long and begins to run once an email is sent to the claimant notifying her of the deficiency. Pls.' Suppl. Br. at 9. Defendants have further agreed to extend this period, instructing the Settlement Administrator to "accept any cured claims within 45 days irrespective of whether they would otherwise have been deemed untimely." *Id.* at 10.

In response to the Court's queries on the website and phone line through which claimants can learn about the claims process, Defendants have agreed to add links to the Settlement Website from its voluntary recall site and to keep the Settlement Website and call center live through 2023. *Id.*

The terms of the Settlement Agreement ensure efficient distribution of relief. For example, Settlement Class members who request a new Recall Repair are entitled to have that repair completed within fourteen days of the request. Otherwise, Samsung will provide a $50.00 equivalent card or replace the Settlement Class members' Washer.

---

[13] Objector Morgan comments on the requirement that Class Members who elect to receive the Recall Repair must attest that the machine will be operated in accordance with revised operating guidelines. *See* Morgan Obj. at 14. This requirement is reasonable and directly promotes public safety, by ensuring that Washers left in homes are operated in a way that minimizes the risk of Top Separation.

The Court finds that the Settlement Agreement asks that claimants fulfill only basic and flexible documentation requirements, which are no more burdensome than necessary. The claims-administration process involves no complex proofs or calculations and incorporates certain speed guarantees. The Court is satisfied that the Settlement structure was designed for efficient claim processing and relief distribution. Any objections on this point are hereby overruled.

iii.     *The proposed fee award, including the timing of the payment, weighs in favor of final approval.*

Most objections in this consolidated case centered around the attorneys' fees requested. *See, e.g.*, Strass Obj. [Doc. No. 186], Ex. M at 3. The Court will defer the fee-award determination until after the detailed billing records have been carefully reviewed and will address pertinent objections at that time. *See, e.g., Martin v. Reid, 818* F.3d 302, 309 (7th Cir. 2016) (affirming a district court's decision to defer a fee award until after final approval and noting that "[n]othing in Rule 23 prohibits the deferral of the final fee award until after the agreement is approved, especially . . . where the fees are kept entirely separate from the funds that will be available for compensation"); *In re Petrobras Secs. Litig.,* 2018 WL 3091256, at \*15 (S.D.N.Y. June 22, 2018) (deferring fifty-percent of the fee award because "counsel should not be paid in full before their clients have received any of their recovery, nor would it be helpful to eliminate an incentive for counsel to monitor the distribution agent and ensure that the settlement funds are distributed expeditiously"); *Averett v. Metalworking Lubricants Co.*, 2017 WL 4284748, at \*7 (S.D. Ind. Sept. 27, 2017) (deferring fee to account for "improvements" fund that may never be spent).

Nevertheless, there are facts relevant to how the fees were negotiated, which favor final approval.  Critically, because the Parties negotiated attorneys' fees after finalizing the substantive terms of the Settlement Agreement, the requested "fee award does not reduce the recovery to the class." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-5173, 2008 WL 1956267, at *15–16 (S.D.N.Y. May 1, 2008) ("[R]egardless of the size of the fee award, class members who apply for recovery under the terms of the Settlement will receive the same benefit[.]").

Ultimately, "[c]ourts are charged with [] assessing the scope and size of any fee award." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 786 (N.D. Ohio 2010); *see Stanton v. Boeing, Co.,* 327 F.3d 938, 964 (9th Cir. 2003) (agreement not to object did not relieve district court from obligation to review fee amount).  Class Counsel will not be paid until after final approval of the Settlement, and after the Court is satisfied that the size of the award is reasonable under the law.

The proposed award, supported by detailed billing records, the Court's ultimate discretion in determining the size of the award, and the timing of the request and distribution of the fees all weigh in favor of approval.  All objections on this point are hereby overruled, with the exception of those going to attorney fees to be addressed in a separate order awarding fees.

iv.    *Existing side agreements have been disclosed and do not suggest the Settlement Agreement is unfair.*

Rule 23 contemplates that the Court should monitor any agreements to settle objector's claims. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). This is because the outcome of these

side agreements may inform the Court as to whether the value of the Settlement Agreement is adequate.  Assuming all other factors equal, where side agreements provide for the same per capita relief as has been afforded to the class, that tends to validate the adequacy of the class settlement.  If side agreements resolve disputes for more than what is being offered to the class members, there should be adequate justification for the differential.  After all, a higher settlement for objectors with similar damage claims might signify that the class members did not receive full value for their claims, and the Court has the authority to scrutinize the "buying out" of such objectors.  *See* FED. R. CIV. P. 23(e)(2)(C)(iv) (one of the four factors in assessing the adequacy of the class relief is "any agreement required to be identified under Rule 23(e)(2), which requires settling parties to file a statement identifying any agreement made in connection with the settlement").

Certain Plaintiffs or Settlement Class Members, some with the assistance of Class Counsel, have independently negotiated with Defendants to receive direct compensation for property damage caused by Top Separation or Drain Pump Failure.  *See* Mot. Final Approval, Ex. A ¶ 6.  As the Settlement Agreement does not release property damage claims, and these negotiations are not required by, do not depend on, or otherwise impact the Settlement, they are not relevant here. *See id*.

There is another side agreement between Defendants and New Jersey Counsel.  The Court has reviewed the side agreement and finds that: (1) its terms do not suggest the underlying Settlement Agreement is unfair; (2)this side agreement is to the ultimate benefit of the Settlement Class; and (3) the payments directed therein do not diminish the benefits to the Settlement Class under the Settlement Agreement.  The side agreement between

Defendants and New Jersey Counsel is approved. All Parties have met their disclosure requirements under the rules.

### C. The Settlement Agreement treats the Settlement Class equitably.

The fourth *Rutter* factor, and the only one not to directly overlap with the Rule 23(e)(2) inquiry, is "the judgment of the parties that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1189.

This Settlement Agreement builds on the structure established by the voluntary recall. All Settlement Class members benefit from the same relief options, although the relief for which they qualify depends on their specific circumstances: whether the claimant experienced Top Separation or Drain Pump Failure, and whether they selected the recall Rebate or the Recall Repair when participating in the voluntary recall.

The parties' view of a settlement as fair and reasonable is to be given considerable weight. *See Ashley v. Reg. Transp. Dist. & Amalgamated Transit Union*, No. 05-0156, 2008 WL 384579, *7 (D. Colo. Feb. 11, 2008) ("Counsel's judgment as to the fairness of the agreement is entitled to considerable weight."); *see also Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288–89 (D. Colo. 1997) ("[T]he recommendation of a settlement by experienced plaintiffs' counsel is entitled to great weight."); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *In re Molycorp, Inc. Sec. Litig.,* No. 12-CV-00292-RM-KMT, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017).

The Parties here agree that the Settlement Agreement is fair and reasonable, and—with the exception of objectors' concerns—the Motion for Final Approval remains largely unopposed. Mot. Final Approval at 13. Class representatives and Defendants, all highly familiar with the strengths and weaknesses of this litigation, support the terms of the Settlement Agreement. Objector Morgan states that he "does not contend that the Settlement did not extract enough value, in the aggregate, from [D]efendants." Resp. to Court's Questions [Doc. No. 211], at 1. To reiterate the Court's conclusions in granting preliminary approval, the Settlement "does not grant preferential treatment to Plaintiffs or Class Counsel." Prelim. Approval Order at 11.

The Court expressly finds that the Settlement Agreement is the result of extended, arm's-length negotiations among experienced counsel and is non-collusive. Any remaining objections as to this point are hereby overruled. The Court finds all the *Rutter* factors have been satisfactorily met.

## CONCLUSION

Because the Settlement Class meets the requirements of Rule 23, the Court grants final class certification for settlement purposes. The Settlement Class is defined as:

> Every resident of the United States or its territories who was the original purchaser of a new Washer for household use. The Settlement Class excludes: (1) officers, directors, and employees of Defendants and Defendant Retailers, (2) insurers of Settlement Class Members, (3) subrogees or all entities claiming to be subrogated to the rights of a Washer purchaser or a Settlement Class Member, and (4) all third-party issuers or providers of extended warranties or service contracts for the Washers.

The release of claims under the Settlement Agreement is clear, easy to understand, and based on the same factual predicate as the underlying complaints. Further, the Court

finds that the Settlement Class has been provided with the best notice practicable and that notice to appropriate state and federal officials has been timely sent consistent with 28 U.S.C. § 1715. The Settlement is fair, adequate, and reasonable, satisfying all the Rule 23 requirements and the Tenth Circuit's additional guidance under *Rutter*. The Court therefore grants final approval.[14]

The Settlement Administrator has received, from certain members of the Settlement Class, requests for exclusion from the Settlement Class and has provided Class Counsel and Defendants' counsel copies of those requests. A list of the persons who have timely elected to be excluded from the Settlement has been submitted to the Court. *See* Perry Decl., [Doc. No. 246-1], Ex. A, at 6–23 (listing 797 valid requests for exclusion and providing the appropriate identifiers).

**IT IS THEREFORE ORDERED** that Plaintiffs' Unopposed Motion for Final Approval [Doc. No. 152] is **GRANTED**. An Order regarding attorneys' fees, representative fees, and expense reimbursements will follow, after review of counsels' detailed billing records is completed.

**IT IS FURTHER ORDERED** that Objector Morgan's Motion to Disqualify [Doc. No. 247] is **DENIED**.

---

[14] The Court has noted instances in which Defendants have made certain concessions having to do with the administration and logistical details of providing the relief set forth in the Settlement Agreement. These matters are included within the Court's express retention of jurisdiction set forth in the related Judgment to ensure performance under the Settlement Agreement.

**IT IS FURTHER ORDERED** that all persons named in the list submitted to the Court as having filed timely exclusions with the Settlement Administrator are hereby excluded from the Settlement Class and will not be bound by the terms of the Settlement Agreement. Otherwise, each individual or entity that falls within the definition of the Settlement Class shall be bound by the terms of the Settlement Agreement.

**IT IS FURTHER ORDERED** that, consistent with this Order and as required by the Settlement Agreement, the Parties shall carry out their respective obligations under the terms of the Settlement Agreement, to include Defendants' concessions having to do with the administration and logistical details of providing the relief set forth in the Settlement Agreement.

**IT IS FURTHER ORDERED** that Plaintiffs and Settlement Class Members have waived and relinquished claims, rights, and benefits as contemplated by the Settlement Agreement.

**IT IS FURTHER ORDERED** that upon entry of this Order and its accompanying Judgment, enforcement of the Settlement Agreement shall be the exclusive remedy for all Settlement Class Members, in accordance with the terms of the Settlement Agreement.

**IT IS FURTHER ORDERED** that, if after entry of this Order and its accompanying Judgment by the Court, a notice of appeal is timely filed, and an appellate court makes a final determination that this Order and accompanying Judgment are in any respect invalid, contrary to law, or unenforceable (save for such determinations that are limited to Attorneys' Fees and Expenses and/or Service Awards), except as the Parties may elect pursuant to rights set forth under the Settlement Agreement, this Order and the

accompanying Judgment shall be vacated, and Defendants may fully contest certification of any class as if no Settlement Class had been certified. In addition, the Parties may return to their respective positions in this lawsuit as they existed immediately before the Parties executed the Settlement Agreement, and nothing stated herein or in the Settlement Agreement shall be deemed an admission or waiver of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this action or in any other action.

**IT IS FURTHER ORDERED** that nothing contained in the Settlement Agreement, any documents relating to the Settlement, the Preliminary Approval Order, or this Order and its accompanying Judgment shall be construed, deemed, or offered as an admission by any of the Parties or any member of the Settlement Class for any purpose in any judicial or administrative action or proceeding of any kind, whether in law or equity.

**IT IS FURTHER ORDERED** that the Court shall dismiss with prejudice all claims alleged in the Consolidated MDL Lawsuit and in each of the consolidated Lawsuits against all Defendants and Defendant Retailers. A separate judgment will be entered accordingly.

**IT IS SO ORDERED** this 22nd day of May, 2020.


TIMOTHY D. DeGIUSTI
Chief United States District Judge